### Ed. Terry v. Mattoon Ice & Storage Company.

1. PRINCIPAL AND AGENT—*Principal Bound by Agent's Arrangement.*—T. rented a refrigerator room for the purpose of storing meat at his own risk. Afterward at plaintiff's request he stored some of plaintiff's meat therein without notice to the company of its ownership. *Held,* that plaintiff was bound by the agreement entered into between T. and the company and deposited his meat at his own risk.

**Trespass on the Case.**—Appeal from the City Court of Mattoon; the Hon. J. F. HUGHES, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

JOHN S. HALL and ANDREWS & VAUSE, attorneys for appellant.

JAMES W. & EDWARD C. CRAIG, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was an action on the case by appellant, Ed. Terry, against appellee, Mattoon Ice & Storage Company, which was tried in the city court of the city of Mattoon by jury, and resulted in a verdict and judgment in favor of appellee.

Appellant, having moved for a new trial, which was denied, took an exception, brings the case to this court by appeal, and urges a reversal of the judgment on the alleged grounds that the court admitted improper evidence for appellee, gave improper instructions for appellee, and that the verdict is against the weight of the evidence.

The case was tried on the declaration as amended, which charged that heretofore appellant was engaged at the city of Mattoon in the business of running a butcher shop, and in buying, killing and selling at retail, cattle, hogs and sheep, from which he was earning great profit; that as such butcher, he owned and possessed four fat cattle which were dressed for beef, and which he desired to put in cold storage until such future time as he should desire to sell it from his shop in the ordinary run of trade; that appellee was at the same time then and there possessed of and using a cold storage plant for keeping and preserving such butcher stock as appellant possessed; that on, to wit, December 18, 1900, appellant obtained of appellee storage in its plant for the meat of said four cattle which was then sound and in good condition; that it was the duty of appellee to keep said meat from spoiling and to preserve it from damage, so it would be fit for trade when appellant should desire to use it; yet appellee so negligently kept the meat that in a few weeks after it was put in the plant, it spoiled and became worthless; that appellant, not knowing that it had spoiled, took a portion of it to his shop and retailed it to his customers, who, discovering its condition, returned it to him. And that by reason of said negligence of appellee, the meat was wholly lost to appellant, and he deprived of great profits in his business, thereby being damaged to the amount of $500.

Appellee pleaded not guilty.

The evidence shows that appellee, at and before the time in question, owned and operated an ice manufacturing plant in the city of Mattoon, and in conjunction therewith had a cold storage room and an ice room, the latter not being properly fitted for cold storage. For a long time prior to

Terry v. Mattoon Ice & Storage Co.

and during the time covered by the transaction in question in this case, the cold storage room was leased exclusively to C. W. Walker; and one J. W. Terry had the ice room leased at $20 a month, he to look after the meat he put into it, and appellee to be free from all responsibility for its keeping. In September, 1900, J. W. Terry gave up the ice room, and at that time the manager of appellee offered to let him have it during the winter months for $15, upon the same terms as before in other respects. J. W. Terry replied that he thought he could use the room then on those terms, and would let him know. The manager informed the employes at the plant of the offer made J. W. Terry, and instructed them to let him have the room when he wanted it. On December 18, 1900, J. W. Terry, at the request of appellant, Ed. Terry, 'phoned to appellee's plant inquiring if the ice room was empty, and being informed that it was, said he would send a man down with some meat to put in it. Shortly after this telephone message, appellant, with one Frank Kinser, came to the plant with a load of meat, and asked the engineer to tell him where the meat room was. The engineer inquired which room, and appellant replied that he had a load of meat for J. W. Terry, which they wanted to put into the room engaged by him. They were shown the ice room, where they hung the meat in question upon hooks brought with them for that purpose. The rent of the ice room was charged on the books to J. W. Terry at $15 a month. At the expiration of one month after the meat had been hung in the ice room, appellee presented J. W. Terry with a bill for $15 for the rent of the ice room for one month. J. W. Terry then informed appellee's manager that Ed. Terry (appellant) would pay it, as the meat belonged to him. This was the first intimation that any of the agents or employes of appellee had that it was appellant's meat, and not J. W. Terry's, that had been put into the ice room on December 18, 1900.

On January 11, 1901, appellant started a butcher shop in the city of Mattoon, and began offering to sell therefrom

the meat he had stored in the ice room, although it had decayed and was unfit for use. People would not buy the meat because of its spoiled condition, and in nine days thereafter appellant quit keeping the shop.

Appellant left some of his meat in the ice room until June, 1901, when, because of its offensiveness from decay, it was not permitted to remain there longer.

On the trial the court permitted appellee, over the objections of appellant, to show that appellee's manager had offered to let J. W. Terry put meat into the ice room at $15 per month during the winter months at his (J. W. Terry's) risk before appellant got him to 'phone to the plant inquiring whether the ice room was empty, and that he would send a man with meat to put into it. It is contended that this was improperly admitted, for the reason that appellant was not present when the offer was made, and did not know of it when he put the meat into the ice room.

But we are of opinion that it was properly admitted, for the reason that when appellant procured J. W. Terry to arrange over the 'phone with appellee for putting the meat into the ice room, he bound himself to all the arrangements which were made between J. W. Terry and appellee respecting storing the meat there, and if appellee and J. W. Terry agreed that the meat was to be put there at the risk of the owner, appellant, in order to get his meat into the room, should not be permitted to represent that it was owned by J. W. Terry, and afterward claim it was not J. W. Terry's, but his, for the purpose of rendering appellee liable on account thereof, when it would not be liable to J. W. Terry on account of the agreement between him and appellee, which had been made in good faith and without any knowledge on the part of the agents and employes of appellee that the meat belonged to appellant, and not to J. W. Terry.

The verdict and judgment being proper under the evidence, renders it unnecessary for us to consider the objections argued against the rulings of the court on the instructions, and we will affirm the judgment.